Booth, Chief Justice,
delivered the opinion of the court:
The original petition in this case was filed August 21, 1920. Voluminous testimony was taken by both plaintiff *410 and defendant and an exceptional number of exhibits filed including some thirty-four patents filed by defendant as alleged prior art and including a United States patent to Amici No. 41173 and a French patent to Drake No. 451289.
Although defendant called as witnesses such ordnance experts as Theodore S. Wilkinson, in charge of the development of experimental ordnance during the war, and Admiral Ralph Earle, Chief of the Bureau of Ordnance, June,. 1918, to January, 1919, and who has frequently testified as expert in other patent matters pertaining to ordnance before, this court, the defendant did not see fit to introduce any opinion or expert testimony regarding the alleged prior-art.
On June 20, 1925, the case was referred to one of the-commissioners of the court who filed a report on September-22, 1927.
The case was argued and submitted on its merits on May 1, 1928. On February 4, 1929, the court filed findings of' fact and a conclusion of law in which it was held that plaintiff was entitled to recover $35,000 for an invasion of its. contractual rights plus an added amount for the infringement of patent rights as predicated upon certain specified' claims of United States Patents No. 1305186 and No. 1305188-held valid and infringed, this added amount to be determined in the usual manner by reference to a commissioner-of the court for further proof as to reasonable and just compensation.
Under date of April 5, 1929, plaintiff and defendant each filed motions for a new trial, including therein certain-, amendments to the findings.
On June 10, 1929, the court overruled plaintiff’s motion-for a new trial, allowed in part and overruled in part defendant’s motion, vacated the former findings and filed amended findings and an amended opinion, the former-judgment to stand.
On January 7, 1931, defendant filed a second motion fora new trial citing section 175, Judicial Code (U. S. C. ch. 7, sec. 282). In this motion defendant asked for leave to-submit new evidence that Bergman, the patentee, was not. *411 the first inventor of the feature of ejecting the illuminating and suspension elements of an illuminating shell through the rear thereof or in a direction opposite to its line of flight.
Defendant also moved to submit evidence that the feature of employing two parachutes, one acting to check velocity and the other acting as the suspension means for the illuminant, was not new or novel at the time the patentee Bergman claimed to have invented it.
The motion was accompanied by the usual affidavit required by the rules of the court (rule 78) setting forth in detail the pertinent facts expected to be proved, the affidavit specifying United States patent to Amici No. 41173 as pertinent to the rear ejection feature and United States patent to Drake No. 1051709 as pertinent to the parachute feature.
On March 19, 1931, the court issued an order giving defendant twenty days in which to take testimony with reference to the Drake and Amici patents, and plaintiff a suitable time to take rebuttal testimony, remanding the case to a commissioner for this purpose.
An inspection of the record indicates that during the hearings before the commissioner, defendant made several attempts to introduce expert opinion testimony relative to other alleged prior art patents. Such testimony clearly beyond the scope and intent of the order of remand was objected to by plaintiff and the objections properly sustained by the commissioner.
The commissioner’s report was duly filed, and the case was submitted to the court.
The two questions before the court are:
(1) Does the Amici patent anticipate the claims of Patent No. 1305186, in suit, which relate to base or rear ejection of the illuminant and its sustaining parachute in a direction contrary or opposite to the line of flight? Claim 8 of the patent in suit, which is typical of this feature, is as follows:
“A shell having an illuminating charge, means for expelling the illuminating charge out of the shell in a direction opposite to its line of flight, and means for sustaining the illuminating charge after expulsion.”
*412 (2) Does the Drake patent anticipate those claims of patent No. 1305186 which relate to the retarding of the illuminant prior to the functioning of the 'main parachute or sustaining device? Claim 1, which is typical of this feature, is as follows:
“A projectile having an illuminant, a sustaining device therefor and means adapted to check the speed of the illuminant at high velocities previously to the operation of the sustaining device.”
The Amici patent discloses an illuminating shell adapted to be fired from a smooth-bore cannon or mortar at a relative high angle of fire, the projectile being of an elongated form and having both ends of rounded contour. The major portion of the shell is of cast iron, this material forming the walls of the shell and one end thereof. The remaining end consists of a rounded wooden block or cap adapted to be blown off when the contents of the shell are expelled through this end during the flight of the shell.
When this case was originally before us on the question of validity, the Patent Office copy of the Amici patent, filed by defendant as a prior art exhibit for consideration by the court, disclosed this shell with the iron or metal end of the shell at the bottom of the sheet of the drawing and the wooden cap at the top. This arrangement of the shell in the drawing was cited as an error in the supporting affidavit accompanying the motion for a new trial, and the copy now before us for consideration, defendant’s Exhibit M-5, has the position of the shell reversed with the wooden cap at the bottom of the sheet and the metal end at the top thereof with the title of the drawing on the side of the sheet.
Testimony has been taken as to which of these two disclosures is the more correct. We think this question is easily answered.
In the original Amici exhibit the drawing had the reference characters in normal position on the sheet. In the drawing accompanying the copy of the Amici patent, defendant’s Exhibit M-5, the reference characters are upside down. It is perfectly obvious that anyone reading this drawing would invert this sheet so that the reference *413 characters would be readable. The fact is clear that there is only one way to read a drawing and that is the way in which the reference characters can he read. When in this position the metal end of the shell is at the foot of the drawing, and the wooden end at the top, as shown in the accompanying illustration.
That this is the proper position of the shell is additionally indicated by the specification which refers to “ two quick-matches passing up the shell to fuse hole n ” and “ attached to the top of the pot † is a chain h.” As the top or nose of a shell is that portion which is the first to emerge from the gun from which it is fired and as the base or bottom of a shell is that portion which is always adjacent the expelling charge, the above-quoted phraseology is an entirely sufficient disclosure to those skilled in the art that this shell is intended to be fired with the metal end adj acent the propelling charge in the gun and the wooden end at the nose or front of the projectile. It appears that if the shell were fired otherwise — that is to say, with the wooden block or

*414 cap adjacent the powder charge of the gun — the wooden cap would not withstand the shock of firing but would be splintered or driven into the interior of the projectile against the parachute. All of these various facts point to a conclusion that an ejection of the shell content would be through its nose rather than through its base.
It is manifest that when the Amici shell is fired with the metal end toward the rear that the center of gravity of the shell would also be toward the rear and would cause the shell to tumble during a portion of its trajectory. Such tumbling would be emphasized by the shape of the end of the shell and by the fact that it is discharged from a smooth-bore gun. During the latter part of its trajectory and when the shell is falling toward the ground the tumbling of the shell may cease and the shell fall with its heavy end or its metal end forward. The point at which this takes place is dependent upon a large number of factors such as the weights of the various constituent parts of the shell and is undeterminable without experimentation.
If the Amici patent teaches anything to those skilled in the art, it indicates an illuminating shell having an ejection through the nose of a shell that tumbles. On the contrary the Bergman patent in suit discloses rear ejection, its functioning and its utility in a stable nontumbling shell. We can not see how the disclosure of the Amici patent in any way invalidates the Bergman patent No. 1305186 with reference to the rear ejection feature of the illuminating charge.
The United States patent to Drake, No. 1051709, patented January 28, 1913, discloses an arrangement of parachutes for aeroplanes, the functioning of which is to permit the aviator to jump from the aeroplane and descend safely to the ground. This patent relates to a main parachute normally supported and fastened in a collapsed state on the top of the aeroplane wing and a smaller releasing parachute connected to the main parachute and contained in a casing or a receptacle. When the aviator desires to descend by means of the parachute he pulls a small releasing cord which simultaneously releases the lid of the casing containing the small parachute and the holding means which holds the main parachute in its collapsed position on *415 the wing. The small parachute is shot out from its casing by means of a spring and opens, then functioning to strip or lift the main parachute from the wing of the aeroplane. This is materially different in operation and function from the small parachute in the Bergman patent No. 1305186, which operates to slow down the expelled illuminant from the excess speed at which it is moving at the time of ejection so as to prevent damage to the large parachute.
The French patent to Drake No. 451289 was considered by the court and specifically referred to on page 31 in its opinion of June 10, 1929, in which the conclusion was reached that claims 1, 2, 3, 4, and 6, relating to means for checking the speed of the illuminant prior to the operation of the sustaining device, were held valid. A comparison of the United States patent to Drake No. 1051709, now before us, with the French patent to Drake No. 451289, shows that the two are exactly identical as to drawings, the same figures and refei*ence numerals being used in each instance. They are also substantially identical as to the descriptive matter of the specification. No reason is seen for changing or altering in any way our former opinion on this matter.
Defendant in its brief has discussed four additional alleged prior art patents, as follows:
United States patent to Noyes, No. 52314;
British patent No. 5338 of 1913;
British patent No. 10057 of 1912; and
British patent No. 25355 of 1912.
The Noyes patent of record was previously considered and specific reference was made to the same in our former opinion (page 35) in which it was stated that “ The Noyes patent No. 52314 obviously has no bearing upon the Bergman invention.”
None of these patents are formally before us for consideration. To hold otherwise and permit defendant to present alleged prior art in this manner would be to disregard plaintiff’s rights and would rob it of the privilege of taking testimony with respect to what their disclosures convey to the man skilled in the art.
Plaintiff has requested the court to reconsider its earlier decision regarding claims 16 and 17 of patent No. 1305186, *416 and relating to retardation before the sustaining of the illuminant by means of a single parachute construction possessing this dual function. We fail to note anything in the recent testimony which would alter our prior opinion on this subject.
Our previous opinion and judgment of June 10, 1929,. stand.
Witalet, Judge; Williams, Judge; Littleton, Judge; and Green, Judge, concur.